HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERIK HAUGAARD,

    Plaintiff,

    v.

FISKARS BRANDS, INC., et al.,

    Defendants.

CASE NO. C13-1261RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion calendar the court created on January 17 to address Defendant Toren Orzeck's motion to dismiss. Although Mr. Orzeck requested oral argument, Plaintiff Erik Haugaard did not. The court finds oral argument unnecessary. For the reasons stated below, the court concludes that it lacks personal jurisdiction over Mr. Orzeck. The court DISMISSES Mr. Orzeck as a party. The clerk shall TERMINATE the January 17 motion calendar.

## II. BACKGROUND

For purposes of the motion before the court, no one disputes that Mr. Haugaard, a Seattle resident, approached Defendant Fiskars Brands, Inc., in February 2008 to discuss producing and marketing a pocketknife-sized "multitool" device he had designed that contained arms and other attachments enabling the device to be used as a small tripod. Before sharing his design, he and Gerber Legendary Blades ("Gerber"), a division of

ORDER – 1

Fiskars, signed a Confidentiality Agreement. In that Agreement, Gerber promised not to disclose Mr. Haugaard's design outside of Fiskars.

In May 2009, Mr. Orzeck, an Oregon resident, approached a representative of the Leatherman company regarding a new multitool design. Ex. 5.[1] He had worked with Leatherman on a past project. *Id.* Leatherman advised him, without learning what design Mr. Orzeck had in mind, that it preferred that he first file a patent application. *Id.*

Sometime in the summer of 2009, Mr. Orzeck contacted Mathew Jellett, a Washington intellectual property attorney who had previously worked with him on an unrelated product design, about patenting his multitool design. Depo. at 14. The two of them began discussing forming a new entity to pursue commercialization of the design. They did not form that entity, Geyser Ventures, LLC, until January 2010. Ex. 28. Nonetheless, it is plain that they began working to promote their joint venture in 2009. On July 31, 2009, Mr. Jellett submitted a provisional patent application to the United States Patent and Trademark Office, naming himself and Mr. Orzeck as inventors. The drawings accompanying the provisional application disclose a multitool tripod device that is at least superficially similar to the device depicted in drawings that Mr. Haugaard disclosed to Fiskars. *Compare* Ex. 3 *with* Complaint, Ex. A.

After Mr. Jellett submitted the provisional patent application, Mr. Orzeck approached Gerber regarding his design. By September 15, 2009, Gerber had proposed at least a draft of an agreement to license Mr. Orzeck's design. Ex. 10.

On September 18, 2009, a Gerber representative called Mr. Orzeck and told him that Gerber had "dug in and found communications from this designer that has the prior art." Ex. 12. Mr. Orzeck told Mr. Jellett that Gerber's "communications sa[id] that this guy ha[d] filed for a provisional patent in December 2007." *Id.* Mr. Orzeck understood

---

[1] Unless otherwise noted, the court uses "Ex." to cite to the exhibits to Mr. Orzeck's deposition, and "Depo." to cite the deposition transcript. The deposition and exhibits are Exhibit A to the declaration of Mr. Haugaard's counsel. Matesky Decl. (Dkt. # 24).

ORDER – 2

Gerber to be informing him that it had documents suggesting that someone else had proposed a similar design to Gerber in the past.  Depo. at 39.  Mr. Orzeck had no idea who had proposed the design, and declares that he did not know until 2012.  Orzeck Depo. (Dkt. # 17) ¶ 7.  Gerber followed up on September 21 with an email attaching the Confidentiality Agreement that Mr. Haugaard signed in February 2008, except that the Agreement was redacted to hide Mr. Haugaard's name and contact information, his signature, and the date of the Agreement.  Ex. 13 (email from Gerber representative attaching "the NDA that the inventor sent us, with his contact information removed").

Mr. Jellett wrote Gerber to explain his belief that he did not believe the Confidentiality Agreement to be an impediment to pursuing Gerber's plans to market Mr. Orzeck's design.  Ex. 15 (Sept. 22, 2009 email stating that "[t]here does not seem to be anything in this particular agreement that talks about 3rd party development/independent creation.  It just binds Fiskars to the confidentiality of the info during the meeting . . .").  A few days later, Mr. Orzeck suggested that Gerber "find out if there is a Utility patent application and . . . request to see it from the other party," so that it could "assess whether the Geyser {Matt and Tory} work is unique, etc. without violating the confidentiality agreement."  Ex. 16.

There is no evidence that either Mr. Orzeck or Mr. Jellett were ever shown Mr. Haugaard's design, and Mr. Orzeck explicitly denies that he was ever shown Mr. Haugaard's design.  Orzeck Decl. (Dkt. # 17) ¶ 8.  In late October 2009, Gerber explained that it had "results back from lawyers," and had concluded that "it doesn't look like there's anything directly on this turf that you/we would be infringing – including anything by the third-party inventor."  Foster Decl. (Dkt. # 26), Ex. AA (Ex. 17 to Orzeck Depo.).  Gerber stated that it was still "getting clarification on exactly what all of this means for us and how much I can share with you guys."  *Id.*  The record does not reveal if Gerber ever received "clarification," but the court notes again that there is no evidence

ORDER – 3

that Mr. Orzeck saw Mr. Haugaard's design at any time before he finalized his own design.

Although it is not clear what became of Gerber's concerns over Mr. Haugaard's design, it is clear that Gerber (or Fiskars) entered a license agreement with Geyser Ventures in January 2010. Ex. 29. According to Mr. Haugaard, Gerber has commercialized the licensed device as the "Gerber Steady" and has profited.

Mr. Haugaard believes that Fiskars, Mr. Orzeck, and Geyser Ventures stole his design. He sued, asserting that Fiskars is liable for breach of contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing. He asserts that all Defendants are liable for misappropriating trade secrets, unfair competition, and unjust enrichment. His claims against Mr. Orzeck and Geyser depend on his assertions that Mr. Orzeck "had access to and acquired knowledge of [Mr. Haugaard's design] while working as a design consultant for [Gerber]." Complaint ¶ 44. He has no evidence to support that assertion. Indeed, he has no evidence that Mr. Orzeck ever saw his design until well after his own design had been commercialized.

Mr. Orzeck has moved to dismiss the claims against him for lack of personal jurisdiction. Although he has made a few visits to Washington for personal purposes, he has never traveled to Washington in connection with his business ventures. Orzeck Decl. (Dkt. # 17) ¶ 11. Both Leatherman and Gerber are located in Oregon. His contacts with Mr. Jellett were entirely by telephone or email. *Id.* ¶ 4 ("I have never met Jellett face-to-face . . . ."). Geyser Ventures is an Oregon limited liability company with no offices, property, or accounts in Washington. *Id.* ¶ 5. Mr. Haugaard nonetheless asserts that Mr. Orzeck is subject to suit in Washington.

After Mr. Orzeck filed his motion to dismiss, the parties agreed to permit Mr. Haugaard to conduct limited discovery to support his assertion of personal jurisdiction. Mr. Haugaard has relied on that discovery in his response to the motion.

ORDER – 4

### III.  ANALYSIS

When a defendant invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  A plaintiff builds a prima facie case by providing evidence that, if believed, would support the court's exercise of jurisdiction. *Id.* at 1129. The court need not accept a plaintiff's bare allegations if the defendant controverts them with evidence. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in a plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129.  If appropriate, the court must grant a party's request for an evidentiary hearing to determine personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977).  No one has requested an evidentiary hearing in this case.

In a case like this one, where no federal statute governs personal jurisdiction, the court begins its personal jurisdiction analysis with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  Washington's long-arm statute (RCW § 4.28.185) extends the court's personal jurisdiction to the broadest reach that the Due Process Clause of the United States Constitution permits. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989).

There are two species of personal jurisdiction: specific and general. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 & n.9 (1984).  Both species depend on the defendant's contacts with the forum.  "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim," whereas general jurisdiction is not. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir.

ORDER – 5

2007). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts in the state. *Bancroft & Masters*, 223 F.3d at 1086. A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts within the forum state. *Id.*

Mr. Haugaard concedes that Mr. Orzeck is not subject to general jurisdiction in Washington. The court thus considers only whether it has specific jurisdiction over him.

A three-part test determines whether the assertion of specific jurisdiction over a defendant comports with the Due Process Clause:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or [a] resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden on the first two parts of the test. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff meets its burden, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction is unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

As to the first part of the three-part test, the court must first decide whether Mr. Orzeck purposefully availed himself of the privilege of conducting business in Washington, or whether he purposefully directed activity at Washington. These are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. In the Ninth Circuit, tort cases

ORDER – 6

typically require a purposeful direction analysis, whereas contract cases typically require a purposeful availment analysis. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672-73 (9th Cir. 2012).

Mr. Haugaard focuses on purposeful availment, alleging that Mr. Orzeck's collaboration with Mr. Jellett was a business relationship in which Mr. Orzeck availed himself of the privilege of conducting business in Washington. The court assumes, without deciding, that he is correct. The problem is that Mr. Haugaard's claims against Mr. Orzeck do not arise out of his collaboration with Mr. Jellett. They arise out of Mr. Orzeck's alleged misappropriation of his designs in Oregon. Mr. Orzeck's choice to use a Washington intellectual property attorney and business collaborator did not give rise to Mr. Haugaard's claims. A claim arises out of activities in a forum if the plaintiff's injury would not have occurred "but for" those activities. *Harris Rutsky*, 328 F.3d at 1131-32. In this case, if Mr. Orzeck had used no intellectual property attorney at all, and had collaborated with no one (other than Gerber) in commercializing his device, Mr. Haugaard's claims against him would be no different. Even if his collaboration with Mr. Jellett is properly deemed activity "in Washington," it is not activity from which Mr. Haugaard's claims arise.

Mr. Haugaard's assertion of personal jurisdiction fares no better through the lens of a purposeful direction analysis. Courts conducting that analysis apply an "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984):

> Thee defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting Schwarzenegger, 374 F.3d at 803). Here, Mr. Haugaard's argument falters because he has no evidence that Mr. Orzeck committed an intentional act aimed at him in

ORDER – 7

Washington.  As the court has noted, it is not obligated to accept Mr. Haugaard's bare allegations where Mr. Orzeck contradicts them with evidence.  Mr. Haugaard asserts that Mr. Orzeck saw his design, but he has offered no evidence to support that assertion.  Mr. Orzeck has contradicted it with evidence that he did not see Mr. Orzeck's design.  Even if Mr. Haugaard had provided evidence that Mr. Orzeck saw his design, he could not overcome Mr. Orzeck's evidence that he had no idea who the designer was or where the designer lived.  The court does not suggest that it has decided Mr. Haugaard's claim against Mr. Orzeck on the merits, because that is not the court's role in resolving a Rule 12(b)(2) motion to dismiss.  But, for purposes of resolving this motion, the court cannot accept Mr. Haugaard's unsupported assertion that Mr. Orzeck misappropriated his designs.  Mr. Haugaard had an opportunity to discover evidence to support that claim.  He apparently found none.  All of the evidence before the court points to one conclusion: that Mr. Orzeck did not know who Mr. Haugaard was or where he lived, that he did not see Mr. Haugaard's design before completing his own, and that he therefore did not aim any wrongful conduct at Washington.

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Mr. Orzeck's motion to dismiss.  The court DISMISSES Mr. Orzeck as a party, without prejudice to Mr. Haugaard asserting his claims against him in a forum in which Mr. Orzeck is subject to personal jurisdiction.  The clerk shall TERMINATE the January 17 motion calendar.

DATED this 12th day of May, 2014.

_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8